UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA

VERSUS

GAIL RAY DIGNAM

CRIMINAL ACTION

NO. 10-20-SDD-EWD

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on February 24, 2018.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA

VERSUS

GAIL RAY DIGNAM

CRIMINAL ACTION

NO. 10-20-SDD-EWD

## REPORT AND RECOMMENDATION

This matter comes before the Court on a motion by the defendant, Gail Ray Dignam ("Defendant") to vacate, set aside, or correct her sentence pursuant to 28 U.S.C. § 2255 (the "Motion to Vacate").[1] The United States has filed an opposition,[2] and Defendant has filed a reply.[3] There is no need for oral argument or for an evidentiary hearing. For the reasons set forth herein, the undersigned recommends that the Motion to Vacate be denied, and that this matter be dismissed, with prejudice.

### I.     Background

On February 17, 2010, Defendant was charged by Grand Jury Indictment of two counts of mail fraud in violation of 18 U.S.C. §§ 1341 and 1342.[4] The Indictment set forth that from about July 2004 through June 2005, Defendant devised a scheme and artifice to defraud the State of Louisiana and to fraudulently direct money from the Governor's Program on Abstinence ("GPA") to her son, David Cox, while Defendant was employed as director of the GPA. Specifically, the Indictment alleged that prior to serving as director of the GPA, Defendant founded an abstinence education program known as Friends for Teens ("F4T") and served as the president of F4T

---

[1] R. Doc. 148.

[2] R. Doc. 158.

[3] R. Doc. 161.

[4] R. Doc. 1.

between 2002 through April of 2004. Following her appointment as director of the GPA "in or about April of 2004," Defendant solicited Donald Peterson to serve as president of F4T and created a contract between F4T and the GPA by signing her own name on behalf of the GPA and Mr. Peterson's name on behalf of F4T. Per the Indictment, Defendant thereafter created, completed, submitted, and approved fraudulent invoices on behalf of Mr. Peterson, and instructed another individual, Donna Hardin, to open a bank account in the name of "[Don Peterson] d/b/a Friends 4 Teens" over which Defendant controlled the flow of funds. Defendant then directed money from this bank account be used to pay invoices submitted by Defendant's son, without obtaining the approval of Mr. Peterson and without submission to the GPA.

Following multiple continuances granted at the request of defense counsel,[5] a three-day jury trial was conducted October 11, 2011 through October 13, 2011. At the conclusion of the trial, Defendant was found guilty on both counts of mail fraud. A Presentence Report ("PSR") was thereafter prepared.[6] The PSR calculated Defendant's base offense level to be seven (7),[7] increased Defendant's offense level for, *inter alia*, (1) the amount of loss caused to CASSE, which was considered additional conduct (*i.e.*, other relevant conduct, USSG § 2B1.1(b)(1)(G); USSG § 1B1.3)),[8] and (2) Defendant's role as a leader or organizer in the criminal activity (USSG § 3B1.1(c)),[9] and calculated a Guideline range of imprisonment of between 70 to 87 months.[10] Defendant, through her attorney, filed written objections to the PSR.[11] A sentencing hearing was

---

[5] *See*, R. Docs. 8, 11, 23, & 68.

[6] R. Doc. 98.

[7] R. Doc. 98, p. 7, ¶ 22 (citing USSG § 2B1.1(a)(1)).

[8] R. Doc. 98, ¶¶ 16 & 23.

[9] R. Doc. 98, ¶ 25.

[10] R. Doc. 98, ¶54.

[11] R. Doc. 107. The United States filed a response to Defendant's objections. R. Doc. 108.

conducted before the District Judge on March 1, 2012.[12]  At the sentencing hearing, the District

Judge adopted the PSR without change[13] and imposed a term of imprisonment of 70 months on

each count to be served concurrently.[14]  In explaining the sentence, the Court stated as follows:

> Now, that is the lower end of the Guidelines Sentence.  And my
> reasons for imposing it are the factors set forth in 3553(A) and (B).
> This was a program that was well-meaning and was – that the federal
> Congress and the State decided to do.  It had very limited funds.
> And it was not appropriate by your conduct to have diverted those
> funds away from programs to where they were doing what they were
> supposed to do and to line up a job or money to go into accounts
> which you controlled.  You caused the state to lose money, precious
> money for that particular project.  And unfortunately, as the
> government pointed out, you have a track record for going in to
> charitable organizations or groups and in diverting money for those
> groups and their intended purposes and diverting it to you or your
> family's bank accounts.  And the evidence at trial was compelling
> that you did this knowingly and that you understood what it was
> going to do.  You created numerous accounts to hide your activities,
> and it took serious investigation to undercover [sic] that activity.  So
> I think that the guidelines sentence is appropriate in this case.[15]

Relevant to the instant Motion to Vacate, the District Judge increased Defendant's offense level

for (1) the amount of loss caused to the Council for the Advancement of Social Services/Education

("CASSE"),[16] which the court considered additional conduct (*i.e.*, other relevant conduct, USSG

§ 2B1.1(b)(1)(G); USSG § 1B1.3)),[17] and (2) Defendant's role as a leader or organizer in the

criminal activity (USSG § 3B1.1(c)).[18]

---

[12] R. Doc. 119.

[13] R. Doc. 116.

[14] R. Doc. 119, p. 25:23-24.  *See also*, Judgment, R. Doc. 114.

[15] R. Doc. 119, p. 27:5-23.

[16] As set forth herein, the allegations with regard to CASSE were that, in or about January 2003, Defendant made a materially false and fraudulent entry in the CASSE grant application and forged the signature of M.C. on several documents related to the grant application.  R. Doc. 7.

[17] R. Doc. 98, ¶¶ 16 & 23.

[18] R. Doc. 98, ¶ 25. Defendant, through her attorney, filed written objections to the PSR.  R. Doc. 107.  Although Defendant's written objections did not include any objection to inclusion of Defendant's CASSE-related conduct as other relevant conduct or the enhancement based on Defendant's leadership role, defense counsel raised, and the

On March 8, 2012, Defendant filed a Notice of Appeal.[19]  In her appeal, Defendant argued that the District Court violated the Speedy Trial Act, 18 U.S.C. §§ 3161-3174.  Defendant did not appeal the calculations set forth in the PSR, nor did she challenge the District Court's sentence. On May 28, 2013, the Fifth Circuit Court of Appeals affirmed Defendant's conviction for mail fraud.[20]  Following conclusion of that appeal, Defendant filed a Motion for New Trial,[21] as well as the instant Motion to Vacate.[22]  The court deferred ruling on the Motion to Vacate pending a ruling on the Motion for New Trial.[23]  On March 3, 2015, the Motion for New Trial was denied[24] and the United States was subsequently ordered to submit a response to the Motion to Vacate.[25]  The United States filed an opposition to the Motion to Vacate, and Defendant thereafter filed a Reply. Per the Motion to Vacate, Defendant argues that her sentence should be vacated because her appellate counsel rendered ineffective assistance of counsel by failing to appeal the District Court's application of the CASSE-related loss as other relevant conduct and by failing to appeal Defendant's sentencing enhancement based on her leadership role.  As discussed below, the undersigned finds that neither of Defendant's arguments have merit and therefore recommends that Defendant's Motion to Vacate be denied and that this matter be dismissed, with prejudice.

---

District Judge allowed, argument regarding the CASSEirelated conduct during the sentencing hearing.  R. Doc. 119, pp. 9:1-11:6.

[19] R. Doc. 117.

[20] R. Doc. 132, p. 1; *U.S. v. Dignam*, 716 F.3d 915 (5th Cir. 2013).  On November 18, 2013, the Supreme Court of the United States denied the petition for a writ of certiorari.  R. Doc. 133.

[21] R. Doc. 144.

[22] R. Doc. 148.

[23] R. Doc. 150.

[24] R. Doc. 155.

[25] R. Doc. 157.

## II.    Law and Analysis

### A.  Scope of Relief Available Pursuant to 28 U.S.C. § 2255

To obtain collateral relief pursuant to 28 U.S.C. § 2255, a defendant "must clear a significantly higher hurdle" than the standard that would exist on direct appeal. *United States v. Frady*, 456 U.S. 152, 166 (1982). When a defendant has been convicted, and his appellate rights have been exhausted or waived, there is a presumption that his conviction is fair and final. *United States v. Cervantes*, 132 F.3d 1106 (5th Cir. 1998), *citing United States v. Shaid*, 937 F.2d 228, 231-32 (5th Cir. 1991) (*en banc*), *cert. denied*, 502 U.S. 1076 (1992). "As a result, review of convictions under section 2255 ordinarily is limited to questions of constitutional or jurisdictional magnitude, which may not be raised for the first time on collateral review without a showing of cause and prejudice." *Id*. at 1109. This procedural bar does not apply, however, to claims that could not have been raised on direct appeal, such as those for ineffective assistance of counsel. *See*, *Massaro v. United States*, 538 U.S. 500, 504 (2003) (holding that ineffective assistance claims are properly raised on collateral review and are not procedurally barred by a failure to raise them on direct appeal).

As a threshold matter, the United States argues that "all of the defendant's arguments are the sort of technical Guidelines arguments that should not be considered in a Section 2255 action."[26]  Defendant does not respond to this basis for opposing the Motion to Vacate, and the undersigned agrees that arguments regarding the sentencing court's application of the Guidelines fall outside the scope of relief generally afforded by 28 U.S.C. § 2255. "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that

---

[26] R. Doc. 158, p. 7.  *See also*, R. Doc. 158, p. 9 ("A district court's technical application of the United States Sentencing Guidelines does not give rise to a constitutional issue, and therefore cannot be challenged in a Section 2255 proceeding.").

could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *U.S. v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992) (per curium). "Nonconstitutional claims that could have been raised on direct appeal, but were not, may not be asserted in a collateral proceeding." *Id*. The Fifth Circuit has held that "[a] district court's technical application of the Guidelines does not give rise to a constitutional claim." *Id*. *See also*, *U.S. v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999) ("Section 2255 motions may raise only constitutional errors and other injuries that could not have been raised on direct appeal that will result in a miscarriage of justice if left unaddressed. Misapplications of the Sentencing Guidelines fall into neither category and hence are not cognizable in § 2255 motions."); *United States v. Segler*, 37 F.3d 1131, 1133-1134 (5th Cir. 1994) ("Applying the § 4B1.1 criteria to determine whether to sentence as a career offender does not implicate any constitutional issues. Moreover, this claim could have been raised on direct appeal. Accordingly, Segler is not entitled to § 2255 relief.") (internal citations omitted); *Sun Bear v. United States*, 644 F.3d 700, 704 (8th Cir. 2011) ("this court and out sister circuits have consistently held 'that ordinary questions of guidelines interpretation falling short of the 'miscarriage of justice' standard do not present a proper section 2255 claim.") (internal citations omitted); *United States v. Goines*, 357 F.3d 469, 477 (4th Cir. 2004) ("guideline claims ordinarily are not cognizable in § 2255 proceedings."). Here, Defendant did not appeal the application of the "other relevant conduct" enhancement for CASSE related conduct or the enhancement for her leadership role in the offense. Accordingly, the undersigned agrees that Defendant's arguments as set forth in the Motion to Vacate are not the sort that generally support relief under 28 U.S.C. § 2255. However, because Defendant has couched such claims within the argument that she was not afforded effective assistance of counsel, the undersigned has also considered the merits of those arguments below. *See*, *United States v. Ohia*,

Criminal Action No. 13-139, 2017 WL 1088081, at * 7 (M.D. La. March 22, 2017) (explaining that "[i]n the Fifth Circuit, section 2255 petitioners cannot challenge a district court's technical application of the Sentencing Guidelines on collateral review.  Accordingly, these claims are not appropriately before this Court….Insofar as Defendant attempts to frame these issues as claims of ineffective assistance of counsel in counsel's failure to object to such enhancements, these attempts fail.").

### B.  Standard for Demonstrating Ineffective Assistance of Counsel

A habeas defendant who claims ineffective assistance of counsel must affirmatively demonstrate:

> (1)    That his counsel's performance was "deficient", *i.e.*, that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment; and

> (2)    That the deficient performance prejudiced his defense, *i.e.*, that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial in which the result is reliable.

*Strickland v. Washington*, 466 U.S. 668 (1984).  The defendant must make both showings in order to obtain habeas relief based upon the alleged ineffective assistance of counsel.  *Id.*

"The entitlement to effective assistance does not end when the sentence is imposed, but extends to one's first appeal of right."  *Williamson*, 183 F.3d at 462 (citing *Evitts v. Lucey*, 469 U.S. 387, 394 (1985); *Green v. Johnson*, 160 F.3d 1029, 1043 (5th Cir.1998)).  The Fifth Circuit evaluates counsel's appellate performance under the same two-prong test set forth in *Strickland*. *Id*.  Accordingly, in order to prevail, Defendant must establish that her appellate counsel's representation was deficient and that the deficient performance caused Defendant prejudice.  *Id*. *See also*, *U.S. v. Reinhart*, 357 F.3d 521, 525 (5th Cir. 2004) (same).  As this court recently explained, "[a] defendant must satisfy both prongs of the *Strickland* test to succeed on an

ineffective assistance of counsel claim.  A court is not required to address these prongs in any particular order.  If it is possible to dispose of an ineffective assistance of counsel claim without addressing both prongs, 'that course should be followed.'"  *Ohia*, 2017 WL 1088081, at * 4 (citing *Strickland*, 466 U.S. at 697)).

In order to satisfy the deficient performance prong of the *Strickland* standard, a defendant must show that counsel's failure to raise the impositions of the sentencing enhancements on appeal "'fell below an objective standard of reasonableness.'"  *Williamson*, 183 F.3d at 462 (internal citations omitted).  Review of counsel's performance "is deferential, presuming that 'counsel's conduct falls within the wide range of reasonable professional assistance.'"  *Id*.  The Fifth Circuit has explained that "[c]ounsel does not need to 'raise every nonfrivolous ground of appeal available.'"  *Id*. (quoting *Green v. Johnson*, 160 F.3d 1029, 1043 (5th Cir. 1998) and citing *Reese v. Delo*, 94 F.3d 1177, 1185 (8th Cir. 1996) (holding that "counsel has discretion to abandon losing issues on appeal.")).  Nevertheless, a reasonable attorney has an obligation to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful.  Solid, meritorious arguments based on directly controlling precedent should be discovered and brought to the court's attention."  *Id*. at 462-463.  Accordingly, to determine whether appellate counsel's performance was deficient, the reviewing court must consider whether a challenge to the enhancements at issue in the Motion to Vacate "would have been sufficiently meritorious such that [defendant's] counsel should have raised [them] on appeal."  *U.S. v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000).

In order to satisfy the prejudice prong of the *Strickland* standard, a defendant must demonstrate that "'there is a reasonable probability that, but for counsel's unprofessional error[], the result of the proceeding would have been different.'"  *Williamson*, 183 F.3d at 463.  "A

reasonable probability is that which renders the proceeding unfair or unreliable, *i.e.*, undermines confidence in the outcome." *Id.* "When a claim of ineffective assistance of counsel is premised on counsel's failure to raise an issue on appeal, 'the prejudice prong first requires a showing that [the Fifth Circuit] would have afforded relief on appeal.'" *Reinhart*, 357 F.3d at 530 (citing *United States v. Phillips*, 210 F.3d 345, 350 (5th Cir. 2000) ("In the appellate context, the prejudice prong first requires a showing that we would have afforded relief on appeal.").  In order to make this determination, a reviewing court must "'counter-factually determine the probable outcome on appeal had counsel raised the argument.'" *Id.*

On appeal, a district court's application or interpretation of the Sentencing Guidelines is reviewed *de novo* and while its factual findings are reviewed for clear error." *Reinhart*, 357 F.3d at 530 (had defendant raised the issue, "we would have reviewed 'the district court's interpretation or application of the Sentencing guidelines de novo and its factual findings, such as a finding of obstruction of justice, for clear error.'") (citing *Phillips*, 210 F.3d at 351 and *United States v. Huerta*, 182 F.3d 361, 364 (5th Cir. 1999)).  "As long as a factual finding is plausible in light of the record as a whole, it is not clearly erroneous." *Huerta*, 182 F.3d at 364.

### C. The Failure of Appellate Counsel to Appeal Inclusion of CASSE-Related Conduct as Relevant Conduct for Sentencing Purposes Does Not Require Vacating Defendant's Sentence

Defendant contends that appellate counsel's assistance was ineffective because counsel failed to argue on appeal that findings concerning the CASSE loss as "other relevant conduct" were inadequate.[27]  Defendant argues that the sentencing enhancement was based on uncharged conduct and that "neither the Court nor the presentence report identified the relevant criminal

---

[27] R. Doc. 148-1, pp. 4-8.

9

statute Dignam violated by virtue of her contact with CASSE."[28]  Defendant asserts that "[t]he District Court's failure to make specific factual findings with respect to: (1) the criminal statute that was violated in relation to the CASSE loss and, (2) how such losses constituted relevant conduct under USSG § 1B1.3 was erroneous."[29]  In response, the United States argues that Defendant's CASSE-related conduct "is almost an *exact replica* of the conduct charged in the Indictment"[30] and that "at sentencing, there was ample evidence in the record that the defendant's conduct at CASSE was criminal in nature."[31]

### 1.    There Was Sufficient Evidence Adduced at Trial to Properly Consider Defendant's CASSE-Related Acts Other Relevant Conduct

In the PSR, Defendant's CASSE-related acts were described as follows:

> Sometime in 2003 and 2004, the defendant was employed by a non-profit organization called the Council for the Advancement of Social Services (CASSE) located in Shreveport, Louisiana, which provided

---

[28] R. Doc. 148-1, p. 5.

[29] R. Doc. 148-1, p. 5.  Additionally, Defendant argues that because the CASSE-related conduct occurred prior to the acts charged in the Indictment, it cannot constitute relevant conduct under the Guidelines.  R. Doc. 148-1, p. 7 ("There is no doubt that the alleged conduct in this regard does *not*, under any rational calculus of the Guidelines, constitute relevant conduct within the meaning of 1B1.3(a)(2) *because it predated the criminality charged in the Indictment*."); p. 8 ("Here, any 'loss' arguably precipitated by the CASSE funds were created *prior to the commencement* of Defendant's course of relevant conduct.  As such, this conduct is not relevant for Guideline purposes.") (emphasis in original briefing).  With respect to this second argument, Defendant cites comment 8 to USSG § 1B1.3, which provides:

> For purposes of subsection (a)(2), offense conduct associated with a *sentence* that was imposed prior to the acts or omissions constituting the instant federal offense (the offense of conviction) is not considered as part of the same course of conduct or common scheme or plan as the offense of conviction.

Emphasis added.  In response the United States argues, *inter alia*, that comment 8 "relates to offense conduct associated with a *sentence* imposed prior to the federal offense."  R. Doc. 158, p. 17.  A review of the examples associated with comment 8 confirm that an intervening sentence limits the scope of what may be considered other relevant conduct.  Defendant was not sentenced for any CASSE-related conduct in any other previous proceeding, and the undersigned therefore finds Defendant's reliance on comment 8 misplaced.  Moreover, given the close proximity in time between the CASSE-related conduct and Defendant's tenure at the GPA, the undersigned finds Defendant's argument that the CASSE-related conduct cannot possibly be considered as a basis for the USSG § 1B1.3 enhancement unpersuasive.  Accordingly, the undersigned proceeds with an analysis of whether the District Judge made sufficient findings to support an enhancement to Defendant's offense level based on the CASSE-related conduct as relevant conduct.

[30] R. Doc. 158, p. 5.  Emphasis in brief.

[31] R. Doc. 158, p. 10.

counseling and other social services to pregnant women.  While working for CASSE, the defendant obtained a large federal grant, then convinced CASSE to enter into a number of contracts with third parties that would help CASSE deliver the services in the grant.  The 3rd parties included F4T, MySkye, Inc., and PMRC.  Just as defendant had approved the GPA contracts on behalf of GPA, the defendant approved these contracts on CASSE's behalf.  In the same manner that the defendant engaged in self-dealing while director of the GPA, the defendant concealed from CASSE the fact that she and her husband were PMRC's sole officers and directors.  It was also concealed the fact that MySkye was solely owned by PMRC.  Once the contracts were in place, the defendant caused CASSE to pay $46,000 to F4T, $73,999.32 to MySkye, and $69,035 to PMRC, for a total of $189,026.32.  Considering the loss of $51,000 to the GPA, and the loss of $189,026.32 to CASSE, the total loss is $240,026.32.[32]

"A defendant convicted of an offense involving fraud or deceit is sentenced based on the amount of loss attributable to his conduct."  *U.S. v. Benns*, 740 F.3d 370, 374 (5th Cir. 2014) (citing USSG § 2B1.1(b)).  "In addition to losses attributable to the acts underlying the offense of conviction, the loss amount may include losses attributable to other acts that constitute 'relevant conduct' as defined in the Sentencing Guidelines.'"  *Id*. (citing USSG § 1B1.3(a)(2) & noting that that "[f]raud and related offenses sentenced under § 2B1.1 are grouped with respect to multiple counts.  *See* § 3D1.2(d).  Accordingly, relevant conduct for such offenses is determined per the method set forth in § 1B1.3(a)(2).").  "A finding by the district court that unadjudicated conduct is part of the same course of conduct or common scheme or plan is a factual determination subject to review by this court under the clearly erroneous standard."  *U.S. v. Hinojosa*, 484 F.3d 337, 340 (5th Cir. 2007) (citing *United States v. Ocana*, 204 F.3d 585, 589 (5th Cir. 2000)).  *See also*, *U.S. v. Peterson*, 101 F.3d 375, 384 (5th Cir. 1996) ("a district court's findings as to what constitutes relevant conduct is reviewed under a clearly erroneous standard.").

---

[32] R. Doc. 98.  The inclusion of the CASSE-related losses resulted in an additional 4 level increase over what the increase that would have been applicable had the CASSE-related losses not been included. USSG § 2B1.1(b).

The Guidelines state that relevant conduct includes "all acts and omissions…that were part of the same course of conduct or common scheme or plan as the offense of conviction."  USSG §1B1.3(a)(2).  "For two or more offenses to constitute part of a common scheme or plan, they must be substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar *modus operandi*."  USSG §1B1.3 cmt. 9(A).[33] "When sentencing a defendant, a district court may consider uncharged, relevant conduct that has been established by a preponderance of the evidence."  *U.S. v. Ballew*, 40 F.3d 936, 943 (8th Cir. 1994).  "It is not necessary for the defendant to have been charged with or convicted of carrying out the other acts before they can be considered relevant conduct.  However, for the acts to constitute relevant conduct, the conduct must be criminal."  *U.S. v. McConnell*, 273 Fed. Appx. 351, 354 (5th Cir. 2008).  *See also*, *U.S. v. Peterson*, 101 F.3d 375, 384 (5th Cir. 1996) ("For conduct to be considered 'relevant conduct' for the purposes of establishing ones [sic] offense level that conduct must be criminal.").

Here, evidence was introduced during Defendant's trial that her actions while at CASSE involved a similar *modus operandi* and common purpose with her actions while with the GPA.  In particular, while working at both GPA and CASSE, Defendant entered into contracts on behalf of those respective organizations with Friends for Teens (and other organizations controlled by Defendant or her family) and thereby diverted payments to those subcontractors without adequate documentation or receipt of deliverables.  During the trial, Mary Beth Chumley, head of CASSE,

---

[33] "'[C]ommentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline.'" *Huerta*, 182 F.3d at 364 (quoting *Stinson v. United States*, 508 U.S. 36 (1993)).  *See also*, *U.S. v. Powell*, 124 F.3d 655, 665 (5th Cir. 1997) ("Our application of the 'relevant conduct' concept is controlled by the commentary supplied by the United States Sentencing Commission, which carries the same weight as legislative rules adopted by federal agencies.").

testified that she was aware in 2002 that Defendant would be filing a grant on behalf of CASSE[34] and that when the CASSE grant was awarded in the late summer of 2003,[35] Defendant was hired by CASSE full time as project manager.[36]  Ms. Chumley testified that she ultimately obtained a copy of the CASSE grant application using an attorney,[37] and learned that the "dba" for the particular grant project was named "Friends for Teens."[38]  She testified that while she initially did not have any concerns about the project, "as time wore on" she began "questioning the deliverables"[39] and explained that:

> We had significant sums of monies going out, and I wasn't seeing any paperwork that made me feel like we had deliverables coming any time soon, and I began to question Gail about when were we going to get the computers, how were the educational materials coming along?  And I had developed some concerns, because I had no documentation.  I was getting invoices, but I was not getting any supporting documentation.[40]

Ms. Chumley testified that when she raised her concerns with Defendant, Defendant assured her that she had all the necessary supporting documentation.[41]  She further testified that while she "began to get better prepared invoices" she "never got any supporting documents…for the two

---

[34] R. Doc. 93, pp. 194:17-195:4.

[35] R. Doc. 93, p. 197:24.

[36] R. Doc. 93, p. 195:5-11.  Ms. Chumley further testified that Defendant's duties as project manager included managing the grant, selecting and hiring subcontractors, and ensuring the subcontractors fulfilled their responsibilities and received payment for their services.[36]  R. Doc. 93, pp. 196:20-197:1.

[37] R. Doc. 93, p. 202:9-11.

[38] Ms. Chumley stated that she did not know the dba at the time the grant was awarded because she did not receive a copy of the grant when it was filed.  R. Doc. 93, p. 195:12-18.  Ms. Chumley explained that the contact person listed in the grant application was "Glenda Ray," a person she did not know but whose phone number she recognized as the Defendant's.  R. Doc. 93, pp. 203:15-2-4:4.  She testified that although the grant application was signed by "Mary Beth Chumley," it was not her signature and she did not authorize anyone to sign the application on her behalf.  R. Doc. 93, p. 205:3-12.  Ms. Chumley testified that she recognized "Ray" as Defendant's maiden name and "later heard" that "Glenda" was a name Defendant had gone by in high school.  R. Doc. 93, p. 204:5-12.  Defense counsel did not object to Ms. Chumley's assertion that she later heard Defendant went by the name Glenda in high school.

[39] R. Doc. 93, p. 198:2-3.

[40] R. Doc. 93, p. 198:3-10.

[41] R. Doc. 93, p. 198:16-20.

larger contracts" for educational materials from a company called PMRC and computers from a company called MySky.[42]  During her testimony, articles of incorporation for Friends for Teens were admitted listing Defendant as director and agent for service of process at the time Defendant was employed with CASSE, and Ms. Chumley testified that CASSE would not have allowed Defendant to "contract with herself."[43]  Evidence was also submitted that PMRC was doing business as MySky,[44] that the owner of PMRC was Defendant's husband,[45] and that CASSE never received computer equipment or other deliverables from MySky[46] despite making payments.  With respect to PMRC, evidence was introduced showing Defendant as well as her husband were listed as the corporate officers and directors, and Ms. Chumley testified that it would have been a "violation" to have Defendant working for CASSE and contracting with herself.[47]

The United States asserts that Defendant's conduct while at CASSE "was virtually identical to the conduct charged in the Indictment, for instance, a mail fraud scheme under 18 U.S.C. § 1341, all of the conduct could have been considered as part of the same mail fraud scheme or constituting two very similar schemes."[48]  Ms. Chumley's testimony supports a finding that

---

[42] R. Doc. 93, p. 199:3-17.    Ms. Chumley testified that she was never able to locate a physical address for either MySky or PMRC, nor could she find the site for Friends for Teens, which CASSE also had a contract with. R. Doc. 93, pp. 201:23-25 & 202:1-5.

[43] R. Doc. 93, p. 221:1-21.

[44] R. Doc. 93, p. 222:15-24.

[45] R. Doc. 93, p. 223:4-6.

[46] R. Doc. 93, p. 223:14-15.  *See also*, R. Doc. 93, p. 214:2-5 (wherein Ms. Chumley testified that CASSE never received any laptop computers).

[47] R. Doc. 93, p. 224:8-16.

[48] R. Doc. 158, p. 12.  The United States also asserts that Defendant's false statements and entries on the CASSE grant submissions "likely violated 18 U.S.C. § 1001(a)(2) (false statements) and 18 U.S.C. § 1001(a)(3) (false writings and documents)."  These statutes provide that it is a crime to "knowingly and willfully…(2) make[] any materially false, fictitious, or fraudulent statement or representation; or (3) make[] or use[] any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry."  As noted above, Ms. Chumley testified that Defendant was hired to submit and serve as manager of the CASSE grant, and that later review of the grant application showed Ms. Chumley's name had been signed by someone else and that a name associated with Defendant had been listed (instead of Defendant's) as manager.  Additionally, the United States contends that "[b]ecause the object of the defendant's scheme at CASSE was to funnel federal grant money to herself, her husband,

14

Defendant's CASSE-related conduct was also criminal in nature. "To prove mail or wire fraud, the government must prove 'a scheme to defraud, the use of the mail or wire communications, and a specific intent to defraud.'" *Benns*, 740 F.3d at 375 (citing *United States v. McMillan*, 600 F.3d 434, 450 (5th Cir. 2010) (citation omitted)). During Ms. Chumley's testimony, evidence was introduced showing that Friends for Teens, MySkye, and PMRC were controlled by Defendant or her family members and that Defendant entered into contracts on behalf of CASSE (unbeknownst to Ms. Chumley) with these entities. Ms. Chumley testified that payments were made to these entities for items that were not received and that checks issued by CASSE to these organizations were cashed at various banks in Utah.[49]

### 2. Based on the Evidence Adduced at Trial, *Peterson* and *Benns* are Distinguishable.

Defendant relies on relies on *U.S. v. Peterson*, 101 F.3d 375, 384 (5th Cir. 1996) and *United States v. Benns*, 740 F.3d 370, 376 (5th Cir. 2014), for her position that the sentencing court was required to make specific factual findings regarding the criminal statute that was violated with

---

and her son, for products and services that CASSE believes were never performed, the conduct likely violated 18 U.S.C. § 641 (theft and embezzlement of government funds) and/or 18 U.S.C. § 666(a)(1)(A) (theft concerning programs receiving federal funds). Finally, because the defendant not only forged Ms. Chumley's signature but also used her Social Security number and other identifiers without Ms. Chumley's authorization, the defendant's conduct may have violated one or more of the provisions within 18 U.S.C. § 1028 and 42 U.S.C. § 408." R. Doc. 158, p. 13.

[49] R. Doc. 93, pp. 223:14-15; 214:2-5; 211:9-218:13. In addition to her objections to the PSR, Defendant also filed an *Ex Parte* Request for "Downward Departure" from *Federal Sentencing Guidelines*. R. Doc. 111. Therein, Defendant requested a downward departure from the Guidelines and/or the PSR "so as to allow a sentencing range wherein the Court can consider 'suspending' the imposition of any jail sentence as may be applicable" to the Defendant because, *inter alia*, "the evidence from which the jury inferred [Defendant's] guilt is largely 'circumstantial' and almost entirely rests upon the implication of guilty intent from incidents not the subject of this indictment" (*i.e.*, the 404(b) evidence, including but not limited to the CASSE related conduct). R. Doc. 111, p. 2. In opposing such downward departure, the United States argued that Defendant's conduct at previous charitable organizations (including CASSE) established a "track record…of the Defendant defrauding charitable organizations using her position in these organizations for tremendous financial gain." R. Doc. 119, p. 23:18-20. In response, counsel for Defendant argued that the evidence did not support a conclusion that only Defendant was involved with what happened at CASSE, that there was a disagreement about how to manage the CASSE system, and that "[t]here were some personality differences between her and the person that was running the program…." R. Doc. 119, p. 24:15-16. In response to defense counsel's argument, the District Judge noted that it had heard the evidence at trial and that "[t]his is disingenuous of you to come here and argue things that are not – they were in evidence." R. Doc. 119, p. 24:22-23.

respect to Defendant's CASSE-related conduct and how the CASSE-related losses constituted relevant conduct.[50]   However, the undersigned does not read these cases as requiring specific factual findings in every circumstance.   *See*, *Benns*, 740 F.3d at 376 (declining to adopt "an absolute rule" and instead emphasizing that when a defendant is being held accountable at sentencing for uncharged conduct and had objected that the conduct is not criminal, "meaningful appellate review may be impossible without explicit findings by the district court.").   Rather, in both of the cases relied upon by Defendant, the district court record regarding the alleged relevant conduct was lacking.   *See*, *Peterson*, 101 F.3d at 385 (remanding for resentencing where district court determined losses stemming from diversion of funds at issue in a separate civil suit were "relevant conduct" and explaining that the district court made no determination as to whether the loss alleged in the civil suit was criminal, that no criminal charges had arisen based on that conduct, that it was clear from the presentence report that the loss of money alleged in the civil suit "involved a 'grey area' in which lawyers intimately involved with the Fund were unsure," and that "[i]t is equally unclear whether [defendant] could have accepted the $1.3 million as 'investment banking fees' or refused to distribute this money legally under the existing agreement.  The conduct involved here could very well have been provided for under the agreement or at least not disallowed."); *Benns*, 740 F.3d at 375-376 (remanding for resentencing where the record was insufficient to determine whether the conduct considered relevant conduct was criminal and explaining that defendant "did not necessarily commit any crimes in failing to make mortgage payments" on an additional nine properties included as "relevant conduct").   Here, in contrast to

---

[50] *See*, R. Doc. 148-1, p. 5; R. Doc. 161, p. 1.  *See also*, R. Doc. 148-1, p. 6 ("Had appellate counsel argued that the Court's findings were inadequate to support inclusion of the CASSE loss, there is a reasonable probability the Fifth Circuit would have vacated and remanded the case for resentencing.").

*Peterson* and *Benns*,[51] there was evidence presented at trial to support a finding that Defendant's CASSE-related conduct was criminal in nature and properly considered relevant conduct. Unlike the situation presented in *Peterson* or *Benns*, there is sufficient information in the record such that "meaningful appellate review" of that issue is possible. *Benns*, 740 F.3d at 376.

During the sentencing hearing, the District Judge noted that Defendant had "a track record of going into charitable institutions or groups and in diverting money from those groups and their intended purposes and diverting it to [Defendant] or [Defendant's] family."[52] In light of the above evidence, the undersigned finds that the evidence submitted at trial supported sentencing court's determination that the CASSE-related conduct was relevant conduct for purposes of sentencing and that the District Judge's inclusion of the CASSE-related conduct as relevant conduct was not clearly erroneous. Had appellate counsel appealed the use of that conduct as a basis for the USSG § 1B1.3 enhancement, the Fifth Circuit would not have afforded relief on appeal.[53] *Reinhart*, 357 F.3d at 530. *See*, *United States v. Buck*, 324 F.3d 786, 796-797 (5th Cir. 2003) (affirming sentence of defendant, who was convicted of misapplying federal funds and submitting false documents while serving as interim president and CEO of a nonprofit funded in part by federal grants under

---

[51] In *Benns*, the defendant pleaded guilty to the underlying offense and the only information regarding other relevant conduct was contained in the PSR ("Neither the district court nor the probation officer made any attempt to identify evidence of Benns' conduct or explain how such conduct satisfied the elements of some criminal offense.") 740 F.3d at 375. Similarly, in *Peterson*, there was not sufficient evidence that the other relevant conduct was criminal. There, the information regarding other relevant conduct arose from an earlier civil suit against the defendant for allegedly failing to distribute over $1 million in investment funds. The *Peterson* court concluded, "The conduct involved here could very well have been provided for under the [investment] agreement or at least not disallowed.") 101 F.3d at 385.

[52] R. Doc. 119, p. 27:15-18.

[53] Based on the evidence introduced at trial, the undersigned finds that Defendant cannot satisfy the prejudice prong of the *Strickland* test. *Williamson*, 183 F.3d at 463 (in order to satisfy the prejudice prong of the *Strickland* standard, a defendant must demonstrate that "'there is a reasonable probability that, but for counsel's unprofessional error[], the result of the proceeding would have been different.'"). Accordingly, the court need not reach the other prong of the *Strickland* test, *i.e.*, whether counsel's performance was deficient. *Ohia*, 2017 WL 1088081, at * 4. The undersigned additionally finds however, that in light of the evidence adduced at trial, there was a sufficient basis for the sentencing court to have included CASSE-related conduct in the PSR such that appellate counsel's failure to raise this issue on appeal was not deficient.

the Americorps program, which included enhancement for relevant conduct based on "evidence of a similar, but separate incident, involving misapplication of approximately $88,000 of Department of Labor Welfare-To-Work ('DLWTW') grant funds" because both frauds shared a common victim, common purpose, and similar *modus operandi* and explaining that "[i]t does not matter that Buck was never charged with the misapplication of the DLWTW grant funds" and that "[w]ith both the DLWTW and Americorps frauds, Buck used MACE to defraud the government out of social services funds; with both, she certified that she would abide or had abided by the various requirements of the programs. Buck used the funds acquired by both frauds to pay for numerous activities relating to the operation of MACE, rather than for the limited purposes for which the grants were specified."); *U.S. v. Hinojosa*, 484 F.3d 337, 342 ("In this case, the Solegase del Norte scheme and the charged frauds were linked by two factors – a common purpose and a similar modus operandi. The purpose of both schemes was to defraud victims in an investment scheme….After reviewing the record, other differences between the two schemes are not enough to leave us with the definite and firm conviction that a mistake has been made by the district court in treating these two offenses as relevant conduct for purposes of sentencing."). Accordingly, the undersigned recommends that Defendant's Motion to Vacate based on ineffective assistance of counsel in failing to appeal the District Court's interpretation of the sentencing enhancement related to inclusion of CASSE-related actions and losses be DENIED.

### A. The Failure of Counsel to Object to or Appeal the USSG § 3B1.1 Sentencing Enhancement Based on Defendant's Role as an Organizer/Leader Does Not Require Vacating Defendant's Sentence

Defendant additionally argues that she was denied effective assistance of appellate counsel at sentencing and on direct appeal based on counsel's failure to appeal the USSG § 3B1.1 sentencing enhancement. USSG § 3B1.1 provides for sentencing enhancements based on a defendant's role in the offense as follows:

18

(a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.

(b) If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels.

(c) If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels.

"The application of § 3B1.1 is a factual finding reviewed only for clear error. 'A factual finding is not clearly erroneous as long as it is plausible in light of the record as a whole.'" *U.S. v. Fullwood*, 342 F.3d 409, 415 (5th Cir. 2003) (internal citations omitted). *See also*, *U.S. v. Ochoa-Gomez*, 777 F.3d 278, 281 (5th Cir. 2015) ("Whether a defendant exercised an aggravating role as an organizer, leader, manager, or supervisor for purposes of an adjustment under U.S.S.G. § 3B1.1(c) is a finding of fact reviewed for clear error. A factual finding that is plausible based on the record as a whole is not clearly erroneous.") (internal citations omitted). An appellate court will reverse the sentencing court's application of the USSG § 3B1.1 enhancement "'only if, based on the entire evidence, [the appellate court] is left with the definite and firm conviction that a mistake has been committed.'" *U.S. v. St. Junius*, 739 F.3d 193, 208 (5th Cir. 2013) (quoting *United States v. Rose*, 449 F.3d 627, 633 (5th Cir. 2006)). *See also*, *U.S. v. Perkins*, 105 F.3d 976, 980 (5th Cir. 1997) (explaining that where defendant did not object to the 3B1.1(c) enhancement and presented the challenge for the first time on appeal, the appellate court "may remedy the error only in the most exceptional case" and such forfeited errors may, in the appellate court's discretion, be corrected by appellate court if there was a clear and obvious error affecting defendant's substantial rights, where the error "seriously affects the fairness, integrity, or public reputation of judicial proceedings.");

"A defendant qualifies for a § 3B1.1 enhancement if he was the organizer, leader, manager, or supervisor of one or more other participants." *U.S. v. Del Valle*, 405 Fed. Appx. 903, 904 (5th Cir. 2010) (citing USSG § 3B1.1, cmt. 2). Comments to this provision explain that "a 'participant' is a person who is criminally responsible for the commission of the offense, but need not have been convicted." USSG § 3B1.1, cmt. 1. *See also*, *U.S. v. Braun*, 60 F.3d 451, 453 (5th Cir. 1995) (holding that district court's finding that Braun was a leader or organizer of a multi-participant scheme was not clearing erroneous and explaining that while the USSG § 3B1.1(c) enhancement "is not appropriate where the defendant is the sole participant in the criminal activity," the record "amply support[ed] the district court's finding that Braun's employees both knowingly and unknowingly aided him in the commission of the instant offenses" and that the "key determination" was "whether Braun's employees were also criminally responsible for the commission of the offense."). Defendant asserts that application of the USSG § 3B1.1(c) enhancement was invalid because "Dignam was the only criminally culpable participant in this conduct" and that the PSR failed to identify another criminally culpable participant.[54] In response, the United States asserts that "[a]s the PSR references and the record confirms, the defendant's son…participated in the scheme" and that the evidence at trial established "that he submitted invoices and received funds for work that was not performed."[55]

In the PSR, applicability of USSG § 3B1.1(c) was explained as follows:

> In or about April 2004, Dignam was appointed Director of the GPA by then-Governor Kathleen Blanco. Dignam instructed D.H. to open a bank account in the name of "D.P. DBA Friends 4 Teens" at a bank in the Shreveport, Louisiana area. Dignam instructed D.H. to make D.P. and D.H. the only individuals with signatory authority for the account; Dignam told D.H. that her name could not be

---

[54] R. Doc. 148-1, p. 9 ("Because Dignam was the only criminally culpable participant in this conduct, the 2-level adjustment does not apply to her.").

[55] R. Doc. 158, p. 19.

> reflected on any of the account's documents because of her position
> with the GPA. Once the account was open, Dignam instructed D.H.
> that she should always pay invoices submitted by the defendant's
> son, D.C. The defendant was a leader in the criminal activity.
> Pursuant to USSG § 3B1.1(c), increase by two levels.[56]

The PSR also states that "Dignam directed a substantial amount of the money obtained from the GPA to [David Cox (D.C.)], her son" and that Mr. Cox submitted invoices to [Ms. Donna Hardin (D.H.)] for work that he, [David Cox], purportedly performed for F4T" but that these invoices were "never submitted to [Donald Peterson (D.P.)], F4T's President, for his review and approval, nor were they submitted to the GPA."[57]

Here, the testimony at Defendant's trial also supports a finding that Defendant was the leader and organizer of a criminal activity with at least one other criminally culpable participant. During the trial, Donna Hardin testified that David Cox would send her an invoice every month and that Defendant instructed her to "pay him out of the Friends for Teens account."[58] Ms. Hardin's testimony indicated that she did not consult with Defendant regarding issuing checks out of the F4T account, and instead simply wrote checks as instructed by Defendant.[59] Ms. Hardin testified that she never saw any work product at all from Mr. Cox at Friends for Teens.[60] She additionally testified that although she paid certain of Mr. Cox's invoices out of the F4T account

---

[56] R. Doc. 98.

[57] R. Doc. 98, ¶ 14. A PSR generally bears sufficient indicia of reliability and may be relied upon by the sentencing court in making factual determinations. *United States v. Puig-Infante*, 19 F.3d 929, 943 (5th Cir. 1994). Defendant bears the burden of showing that the information contained in the PSR is materially untrue and "'[m]ere objections do not suffice as competent rebuttal evidence.'" *Huerta*, 182 F.3d at 364 (quoting *United States v. Parker*, 133 F.3d 322, 329 (5th Cir.1998) (citations omitted)). As set forth in the PSR, Defendant's son, Mr. Cox, submitted invoices to be paid via the Friends for Teens account, and these invoices were never submitted to either the president of Friends for Teens or the GPA. While Defendant has not shown this information to be materially untrue, without more, the factual assertions in the PSR are not sufficient to indicate that Mr. Cox was also criminally culpable.

[58] R. Doc. 92, p. 167:10-15.

[59] *See*, e.g. R. Doc. 93, p. 24:9-111 & 24:19-20 ("Whatever Gail asked me to do I did, and I did not question her.").

[60] R. Doc. 92, p. 177:6-8.

for work described on the invoices as website programming for a company called "Mcrie," (a company with which Ms. Hardin also worked), she was not aware of any website for Mcrie.[61]  Mr. Greg Lavergne, a certified fraud examiner who was in charge of an investigative audit of Defendant,[62] testified that Mr. Cox was paid $42,925 out of the Friends for Teens account.[63]  Finally, Mr. Peterson testified that, despite being the President of F4T, he was not aware that Mr. Cox had done any work for F4T until "a couple of years later" when Defendant told him her son had done such work, and that while being interviewed by the legislative auditor, Mr. Peterson learned that Mr. Cox had received the majority of the money deposited into the F4T account.[64]

Based on the facts elicited at trial, as well as those set forth in the PSR, the undersigned finds that it is at least plausible that Defendant's conduct warranted the USSG § 3B1.1(c) enhancement, and the sentencing court did not clearly err in applying the enhancement.  *See*, *Junius*, 739 F.3d at 209 ("Our charge here is to determine whether it was *plausible*, in light of the record, that St. Junius' conduct warranted a role enhancement.").  As such, even assuming *arguendo* that appellate counsel's performance was deficient in failing to raise this issue on appeal, the undersigned finds that Defendant was not prejudiced by that error because the appellate court would not have afforded relief on appeal.  *Reinhart*, 357 F.3d at 530.  Accordingly, the undersigned

---

[61] R. Doc. 92, p. 176: 14-21.  *See also*, R. Doc. 92, p. 160:14-15.  Ms. Hardin testified that invoices for Mcrie website programming website work were sent to her at Friends for Teens and that she wrote a checks to Mr. Cox based on those invoices.  R. Doc. 93, pp. 25:3-28:13.    She further testified that she never questioned Defendant about paying Mr. Cox for work purportedly done on the Mcrie website via the F4T account.

[62] R. Doc. 94, pp. 19:21-20:15.

[63] R. Doc. 94, p. 29:11-14.  Mr. Lavergne also testified that Mr. Cox was issued other checks out of the account between January 31, 2005 and March 29, 2005 and that during that same time period no "non-GPA money" came into the Friends for Teens account.  R. Doc. 94, p. 31:3-23.  Mr. Cox testified that he performed work on behalf of Friends for Teens beginning "about December of 2004."  R. Doc. 94, p. 44:20-21.

[64] R. Doc. 93, pp. 153:3-155:3.

recommends that Defendant's Motion to Vacate based on the USSG § 3B1.1(c) sentencing enhancement be DENIED.

**III.    Recommendation**

It is the recommendation of the Magistrate Judge that the Defendant's Motion to Vacate, Set Aside, or Correct sentence pursuant to 28 U.S.C. § 2255 be dismissed, with prejudice.

Signed in Baton Rouge, Louisiana, on February 24, 2018.


**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

23